Filed 7/17/13  Alessandra S. v. Super. Ct. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ALESSANDRA S., | F067140 |
| Petitioner, | (Super. Ct. No. 516006) |
| v. | |
| THE SUPERIOR COURT OF STANISLAUS COUNTY, | **OPINION** |
| Respondent; | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, | |
| Real Party in Interest. | |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Ann Q. Ameral, Judge.

Alessandra S., in pro. per., for Petitioner.

No appearance for Respondent.

John P. Doering, County Counsel, and Robin Gozzo, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Wiseman, Acting P.J., Poochigian, J. and Detjen, J.

Alessandra S. in propria persona seeks extraordinary writ review of the juvenile court's orders issued at a contested jurisdictional/dispositional hearing on a supplemental petition (Welf. & Inst. Code, § 387)[1] denying her reunification services and setting a section 366.26 hearing as to her two-year-old son Erick. (Cal. Rules of Court, rule 8.452.) Alessandra contends she failed to make adequate progress in her reunification services plan because she was incarcerated for part of the reunification period. She seeks relief from the section 366.26 hearing and an order for reunification services.

We conclude Alessandra's petition fails to comport with the procedural requirements of California Rules of Court, rule 8.452 and dismiss the petition as facially inadequate.

## PROCEDURAL AND FACTUAL SUMMARY

Dependency proceedings were initiated in January 2011, when Alessandra was arrested for various charges including murder for her participation in a drive-by shooting that resulted in a death. At the time of the shooting, then three-month-old Erick, the subject of this writ petition, was in the care of Alessandra's sister. Alessandra was arrested on her way to Mexico with Erick. The Stanislaus County Community Services Agency (agency) took Erick into protective custody and placed him in foster care.

Alessandra identified then 17-year-old Eric P. as Erick's alleged father. Eric P. (hereafter "father") was on juvenile probation for illegal possession of a concealed weapon and possession of a controlled substance for sale. He also had an arrest history of participating in a criminal street gang and was known to be a gang member. Father stated he and Alessandra associated with gang members but he and Alessandra did not have a romantic relationship. He did not sign a declaration of paternity and was not listed on Erick's birth certificate but considered himself Erick's father. The juvenile court elevated father's status to that of presumed father.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

The juvenile court ordered Erick detained on an original section 300 petition and set a combined hearing on jurisdiction and disposition. In its report for the combined hearing, the agency recommended the juvenile court offer father reunification services despite its concern about his gang involvement and tenuous commitment to being a father. The agency believed that with the support of his mother and a lifestyle change, reunification could be beneficial to father. The agency recommended the juvenile court deny Alessandra services because she was charged with witness intimidation and participating in a criminal street gang and was facing a long prison sentence if convicted.

In April 2011, at the combined hearing, the juvenile court ordered reunification services for Alessandra and father. In October 2011, father was released from formal probation. Erick's foster parents reported Erick was a "great baby." Even strangers commented on what a "happy baby" he was. Over the following year, the juvenile court continued reunification efforts. By March 2012, Alessandra accepted a plea deal in which she was sentenced to time served and was released on her own recognizance. In June 2012, Alessandra entered residential drug treatment and began weekend visitation with Erick.

In July 2012, at the 18-month review hearing, the juvenile court placed Erick in father's care under family maintenance and continued Alessandra's reunification services.

In October 2012, Alessandra reported to a social worker that Erick had bruises on his cheeks and left thigh. Alessandra said she asked father about the bruising but he had no explanation. The agency investigated but found no evidence of physical abuse.

In January 2013, Alessandra reported that father returned Erick to her with bruises on his cheeks as if someone pinched him. She said she attempted to call the agency but she was directed to a 1-800 number because it was a holiday. She did not call the 1-800 number because Erick was crying. She said she did not ask father for an explanation because they did not speak when they exchanged Erick. Father denied seeing marks or

bruises on Erick's face. He did say, however, that he accidentally bit Erick's ear during horseplay and had to grab Erick under his armpits to keep him from falling. He said he used time out to punish Erick and had seen Erick hit himself in the face.

The agency reported that from October to mid-January Erick had become more aggressive toward his parents and adults and hit himself in the eyes. His behavior reportedly improved with support services.

In February 2013, the juvenile court placed Erick with Alessandra under family maintenance services and continued family maintenance for father and set a family maintenance review hearing for October 2013.

Meanwhile, in March 2013, the agency took Erick into protective custody after Alessandra reported she heard father call Erick a "f***ing little bitch," grab him by the hair and throw him on the couch because Erick was crying. On another occasion, father said "let the little f***er get down on his own" as Erick was attempting to descend the stairs. Alessandra said she also heard father call Erick a "f***ing cry baby" and "f***ing pussy" when Erick cried. Alessandra saw red spots on the back of Erick's neck on various occasions and was told by others that father physically abused Erick. The agency placed Erick with his former foster parents.

The agency filed a supplemental petition (§ 387), alleging the juvenile court's prior orders placing Erick in Alessandra and father's custody had proven ineffective.

Father admitted the physical abuse but denied causing the bruising on Erick's face. He also admitted grabbing Erick by the ear because he was frustrated with him. Asked if he used inappropriate language with Erick and called him variations of the f*** word, he laughed and admitted that he had.

Alessandra said she did not report the abuse sooner because she was afraid that Erick would be taken from her and father and permanently placed in foster care.

The juvenile court detained Erick on the supplemental petition and, in April 2013, conducted a contested jurisdictional/dispositional hearing on the agency's

4

recommendations to deny Alessandra and father reunification services and set a section 366.26 hearing. Mother made an offer of proof accepted by the juvenile court that if called to testify she would take whatever measures the agency deemed appropriate to protect Erick from anyone who would harm him.

At the conclusion of the hearing, the juvenile court sustained the supplemental petition, found the agency provided Alessandra and father reasonable services and their progress was limited. The juvenile court denied them further services and set a section 366.26 hearing.[2] This petition ensued.

## DISCUSSION

Alessandra contends she would have made better progress in her reunification plan if services had been available to her in custody. She further contends she fully utilized the court-ordered services once she was released and continues to do so. To that end, she attached several documents that postdate the setting hearing to support this last claim.

As a preliminary matter, we will not review the documentation Alessandra included with her writ petition because it was not considered by the juvenile court. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Further, we cannot conduct a meaningful review of the petition because Alessandra does not claim the juvenile court erred in terminating her reunification services and setting a section 366.26 hearing.

California Rules of Court, rules 8.450-8.452, govern the procedures for initiating dependency writ proceedings in this court. The purpose of writ proceedings is to facilitate review of the juvenile court's order setting the section 366.26 hearing. (Cal. Rules of Court, rule 8.450(a) (hereafter "rule").) To that end, the rule requires the petitioner to set forth legal arguments by points and authorities, including specific citation to the appellate record. (Rule 8.452(b).)

---

[2] Father did not file a writ petition.

5

In this case, Alessandra did not comply with the rule by including points and authorities.  Nevertheless, this court will liberally construe a petition in favor of its sufficiency if it asserts juvenile court error.  (Rule 8.452(a)(1).)  This court will not, however, independently review the appellate record for possible errors.  (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)  Because Alessandra does not raise juvenile court error, her writ petition is inadequate for review.

Further, given the stage of the proceedings, the juvenile court had no choice but to rule as it did under the circumstances.  When Erick was removed the second time, Alessandra had received over 24 months of combined family reunification and family maintenance services.  Though the dependency statutes allow for extending reunification services beyond 24 months, the juvenile court may do so only if it would serve the child's best interest.  (§ 361.5, subd. (a)(4).)  Here, after suffering mistreatment while in the custody of Alessandra and father, Erick's best interest was in being placed in a loving and stable home.

## DISPOSITION

The petition for extraordinary writ is dismissed.  This opinion is final forthwith as to this court.